IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MIRANT CORPORATION, ET AL., | § | |
| | § | |
| Debtors. | § | |
| ——————————————————— | § | |
| | § | |
| CITY OF VERNON, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| VS. | § | NO. 4:05-CV-060-A |
| | § | (Consolidated with No. |
| MIRANT AMERICAS ENERGY | § | 4:05-CV-061-A) |
| MARKETING, L.P., | § | |
| | § | |
| Appellee. | § | |

MEMORANDUM OPINION
and
ORDER

These actions come before the court as appeals from a partial judgment and a final judgment of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, the Honorable Dennis Michael Lynn presiding.  The court, having considered the briefs of appellant, City of Vernon, and appellee, Mirant Americas Energy Marketing, L.P., the record on appeal, and applicable authorities, finds that the bankruptcy court's partial and final judgments should be affirmed.

I.

Jurisdiction

These are appeals from a partial judgment as to liability and a final judgment awarding damages to appellee.  The court's jurisdiction exists pursuant to 28 U.S.C. § 158.

II.

Underlying Proceedings

Appellant and appellee were parties to a transaction confirmation (the "contract") under the Western Systems Power Pool Agreement ("WSPPA") dated July 1, 2000. Pursuant to the contract, appellant agreed to purchase, and appellee (when named "Southern Company Energy Marketing, L.P.") agreed to sell, from October 1, 2000, to December 31, 2006, twenty-five megawatts of power for $59.45 per megawatt hour, Monday through Saturday on peak hours, excluding certain holidays.

In December 2001, appellant became concerned about the creditworthiness of appellee and made demand on appellee for assurance of performance and creditworthiness pursuant to section 27 of the WSPPA. Because appellant was not satisfied with the response made by appellee, by letter dated January 25, 2002, appellant refused to accept appellee's delivery of power and stated that it was terminating the contract. Appellee, in turn, purported to terminate the contract by letter dated February 1, 2002.

In July 2003, appellee, its parent company, and numerous affiliates commenced Chapter 11 proceedings. On October 23, 2003, appellee filed an adversary proceeding seeking to recover damages from appellant under the contract. Appellant and appellee each filed motions for summary judgment. Appellant's motion was ultimately withdrawn. By partial judgment signed September 14, 2004, the bankruptcy court granted in part

2

appellee's motion, holding appellant liable to appellee for
damages under the contract.  On November 15, 2004, the bankruptcy
court held a hearing on the issue of the amount of damages to be
awarded.  By final judgment signed November 30, 2004, the
bankruptcy court awarded appellee the sum of $13,983,781.99, plus
accrued interest and post-judgment interest.  From the partial
and final judgments, appellant appeals.

III.

Issues on Appeal

Appellant sets forth five issues on appeal.  However, the
dispositive issues are whether the bankruptcy court properly
construed the WSPPA and properly calculated the damages to be
awarded by relying on a certain exhibit entered into evidence
over appellant's objection.

IV.

Standard of Review

To the extent the appeal presents questions of law, the
bankruptcy court's judgment is subject to de novo review.
Pierson & Gaylen v. Creel & Atwood (In re Consolidated
Bancshares, Inc.), 785 F.2d 1249, 1252 (5th Cir. 1986).  Findings
of fact, however, will not be set aside unless clearly erroneous.
Bankr. R. 8013; Memphis-Shelby County Airport Authority v.
Braniff Airways, Inc. (In re Braniff Airways, Inc.), 783 F.2d
1283, 1287 (5th Cir. 1986).  A finding is clearly erroneous,
although there is evidence to support it, when the reviewing
court on the entire evidence is left with a definite and firm

3

conviction that a mistake has been committed.  <u>Id.</u>  The mere fact
that this court would have weighed the evidence differently if
sitting as the trier of fact is not sufficient to set aside the
bankruptcy court's order if that court's account of the evidence
is plausible in light of the record viewed in its entirety.
<u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573-74 (1985).

V.

<u>Discussion</u>

Much of appellant's brief is devoted to arguments that do
not further its cause.  It is obvious that appellant decided it
had made a bad deal and decided to terminate the contract,
knowing that it would nevertheless be liable for damages.  <u>See</u> R.
at 3064 (appellant admits that it knew that by terminating the
contract it would be stuck with a "great big fat damage
payment.").  Sometime during the litigation, perhaps after the
cross-motions for summary judgment had been filed, appellant
realized that it had made a mistake in terminating the contract
(or at least in arguing that it had terminated the contract) and
that its liability would not have been as great if it had simply
refused to accept power from appellee.  Appellant strategically
withdrew its own motion for summary judgment in order to make the
argument that appellee could not prove that the contract had been
properly terminated.[1]  Appellant argues, in effect, that the
bankruptcy court could not find the true facts, i.e., that

---

[1]But for a termination, damages would have been calculated under
section 21.3 of the contract, which requires mitigation, and thus,
the potential for lower damages.

4

appellant terminated the contract, because appellee had only pleaded that it, rather than appellant, had terminated the contract.

As the bankruptcy court found, the record establishes that by February 1, 2002, at the latest, the parties recognized that their contract was terminated.[2]  Appellant argues that damages should have been calculated under section 21.3, rather than section 22.3.  Section 21.3 concerns the failure to deliver or receive quantities of electric power or energy due under the contract.  R. at 876.  Section 22.3 addresses calculation of a termination payment when the contract has been terminated.  According to section 22.2, the payment associated with termination of the contract is to be calculated in accordance with sections 22.2 and 22.3.  R. at 880.  The so-called "termination payment" is the sole and exclusive remedy for termination of a contract.[3]  Id.  The remedies under section 21.3 are available only up until the time the notice of termination is received.  Id.  Thus, appellant is incorrect when it argues that damages must be calculated under section 21.3.

---

[2]The record would support a finding that the contract was terminated by appellant on January 25, 2002.  See R. at 2824.

[3]Appellant argues that the "termination payment" can only follow termination of the contract as a result of an event of default and that because appellee cannot prove that the contract terminated as a result of an event of default, no such payment can be due.  Assuming that a "termination payment" can only follow termination as a result of an event of default, the record reflects, and the bankruptcy court implicitly found, that such a termination occurred.

5

The remainder of appellant's argument is devoted to an attack on the calculation of damages.  Appellant has not shown, however, that the market price for the electricity as determined by appellee was not calculated in a commercially reasonable manner.  Bankruptcy courts are ordinarily accorded wide latitude and discretion in making evidentiary rulings.  <u>Greener v. Cadle Co.</u>, 298 B.R. 82, 90 (N.D. Tex. 2003).

Steve Brown ("Brown"), the witness who sponsored exhibit 18, about which appellant complains, explained how the underlying data had been compiled.  The data was of a type he and the office staff he supervised prepared and relied upon on a daily basis.  Brown prepared the exhibit himself based on data that had been compiled by his office.  His testimony was based entirely on his perceptions and activities in the course of his role as director of credit and counter-party risk for appellee.  R. at 3075.  Thus, it was admissible under Fed. R. Evid. 701.  <u>Bank of China v. NBM, LLC</u>, 359 F.3d 171, 181-82 (2d Cir. 2004).  And, even if it was not, appellant has not shown that its admission was not harmless error.  <u>Id.</u> at 183 (citing <u>U.S. v. Griffin</u>, 324 F.3d 330, 347-48 (5th Cir. 2003)).

One of Brown's activities in the ordinary course of his duties was to prepare exhibit 18.  Brown testified that the numbers used were reliable, and in fact relied upon by him in his day-to-day activities.  Though he did not know if the underlying records could still be printed out at the time of the hearing, R. at 3102, there is no reason to believe that the numbers generated

6

by appellee included in exhibit 18 were not reliable or generated in the ordinary course of appellee's business.[4]  See U.S. v. Sanders, 749 F.2d 195, 198 (5th Cir. 1984).  Appellant has not shown that the bankruptcy court abused its discretion in accepting appellee's proof of damages under the contract. Greener, 298 B.R. at 90.

VI.

Order

For the reasons discussed herein,

The court ORDERS that the partial and final judgments from which appeals are taken be, and are hereby, affirmed.

SIGNED May  17 , 2005.


___/s/ John McBryde_____
JOHN McBRYDE
United States District Judge

---

[4]Exhibit 18 includes numbers generated by other brokers in the same market.  These numbers were not admitted for their truthfulness, but merely to show that appellee's calculations were remarkably similar.

7